UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARTIN L.,

                        Plaintiff,

v.                                                                  1:24-CV-01594
                                                                          (AJB/ML)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                   OF COUNSEL:


LEGAL AID SOCIETY OF                       STEPHEN J. MASTAITIS, ESQ.
NORTHEASTERN NEW YORK INC.        MICHAEL J. TELFER, ESQ.
 *Attorney for Plaintiff*
95 Central Avenue
Albany, New York 12206


U.S. SOCIAL SECURITY ADMIN.              MOLLY CARTER, ESQ.
 *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

Plaintiff Martin L. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI"). (Dkt. No. 1.)  This matter was referred to me for Report

and Recommendation by the Honorable Anthony J. Brindisi, United States District Court Judge,

pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. Nos. 3, 4.)  This case has

proceeded in accordance with General Order 18.

Currently before this Court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 14, 16, 18.)  For the reasons set forth below, this Court recommends the District Court grant Plaintiff's motion for judgment on the pleadings, deny Defendant's motion for judgment on the pleadings, and remand the Commissioner's decision for further administrative proceedings.

## I.       PROCEDURAL HISTORY

On July 15, 2022, Plaintiff protectively filed applications for DIB and SSI, alleging that he became disabled on August 2, 2006, due to post traumatic stress disorder ("PTSD"), major depression, and bipolar disorder. (Administrative Transcript ("T.") 275-85, 304.)  His applications were initially denied on March 20, 2023, and on reconsideration January 30, 2024. (T. 116, 125, 135, 146-47.)  Plaintiff requested a hearing, which was held on August 26, 2024 before Administrative Law Judge ("ALJ") Asad Ba-Yunus. (T. 59-95, 202-204.)  During the hearing, the ALJ heard testimony from Plaintiff and from vocational expert ("VE") Cherie Plante. (T. 68-94.)  The ALJ issued an unfavorable decision on October 4, 2024. (T. 16-29.) This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on October 31, 2024. (T. 1-7.)

## II.      GENERALLY APPLICABLE LAW

### A.       Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

**B.     Standard for Benefits[1]**

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or

she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments;  (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments;  (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)
and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited
interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir.
1983) (citation omitted).

> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

## III.   <u>FACTS</u>

As of the date of the ALJ's decision, Plaintiff was 52 years old. (T. 27.)  He testified that

he had received special education assistance with math while in high school, before leaving in

the twelfth grade just prior to graduation. (T. 70, 438.)  At the time of his August 26, 2024

hearing, Plaintiff resided with his wife, and had two adult children who lived independently. (T.

69, 438.)  He has a limited employment history that most recently includes work as a service

technician at a car dealership. (T. 72-73, 324-325.)  Plaintiff testified that he left this position due

to mental health issues. (T. 73, 438.)

Plaintiff reported a mental health treatment history dating back to his teens, including

multiple "nervous breakdowns" stemming from childhood trauma and stress. (T. 75-76, 438.)

During the relevant period, Plaintiff was engaged in regular mental health counseling and was

prescribed psychiatric medication for diagnosed PTSD, bipolar disorder, and depression. (T. 429,

438, 441, 528-529.)

With regard to physical impairments, Plaintiff reported suffering from constant stabbing

and aching neck pain for the past ten years. (T. 433, 523.)  He also reported lower back pain that

was made worse with prolonged sitting and standing, bending, and climbing stairs. (T. 78, 523.)

He treated these conditions with physical therapy and pain medication.  (T. 390.)

The record includes Plaintiff's relevant medical history.  Rather than summarizing the

records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.   **THE ALJ'S DECISION**

As an initial matter, the ALJ found that Plaintiff met the insured status requirements through June 30, 2009.  (T. 18.)  After finding that Plaintiff did not engage in substantial gainful activity ("SGA") since the protective filing date of July 15, 2022, the ALJ found that Plaintiff had the following severe impairments: cervical degenerative disc disease; sciatica; obesity; depressive disorder; and PTSD. (T. 19.)  The ALJ found no evidence of any medically determinable impairments prior to the date last insured. (*Id*.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment.  (T. 20.)  At step four, the ALJ found that Plaintiff could perform light work. (T. 23.)  Specifically, the ALJ found that Plaintiff

> may only occasionally balance, stoop, kneel, crouch, crawl, climb ramps, stairs, ladders, ropes, or scaffolds; he may occasionally interact with the general public; and he and [sic] tolerate occasional changes to a routine work setting.

(*Id*.)

In making the RFC determination, the ALJ stated that he considered all of Plaintiff's symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929" and Social Security Ruling ("SSR") 16-3p. (*Id*.)  The ALJ further stated that he considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. §§ 404.1520c and 416.920c. (*Id*.)  The ALJ also considered Plaintiff's subjective complaints regarding the intensity, persistence and limiting effects of his symptoms and found

them "not entirely consistent with the medical evidence and other evidence in the record. . . ." (T. 23-24.)  The ALJ next found Plaintiff has no past relevant work. (T. 27.)  However, based upon the RFC and the VE testimony, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (T. 27-28.)  Accordingly, the ALJ found that Plaintiff was not disabled from the alleged onset date through the date of his decision. (T. 28.)

## V.      ISSUES IN CONTENTION

Plaintiff raises a number of procedural and substantive arguments challenging the Commissioner's disability determination.  First, he contends that the Appeals Council failed to properly consider new and material evidence related to his functional limitations, including a previously unavailable opinion of his current mental health provider. (Dkt. No. 14 at 13-15.)  Next, Plaintiff contends that the ALJ failed to properly evaluate the opinion evidence available at the time of his disability determination and erred in his evaluation of Plaintiff's activities of daily living. (Dkt. No. 14 at 17-25.)  Finally, Plaintiff contends that the ALJ erred at step five by failing to apply the Medical-Vocational Guidelines. (Dkt. No. 14 at 25-27.)

Defendant contends that the ALJ's evaluation of the medical opinion, testimonial, and vocational evidence was supported by substantial evidence, and the Appeals Council properly concluded that Plaintiff's new proffered evidence does not show a reasonable probability that it would change the ALJ's decision. (Dkt. No. 16 at 5-20.)

## VI.    APPEALS COUNCIL CONSIDERATION OF NEW EVIDENCE

### A.      Legal Standards

As the Second Circuit held in *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996):

> When the Appeals Council grants review, the decision of the Appeals Council
> is the final decision of the Secretary.  *See* 20 C.F.R. §§ 404.981, 416.1481.

> However, if the Appeals Council denies review, the ALJ's decision becomes
> the Secretary's final decision. *See* §§ 404.981, 416.1481.  The final decision of
> the Secretary is subject to judicial review. 42 U.S.C. § 405(g).

In cases such as this one, where the Appeals Council has denied review of the ALJ's decision, "it

is well-settled that '[t]he role of the district court is to determine if the Appeals Council erred

when it determined that the new evidence was insufficient to trigger review of the ALJ's

decision.'" *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *4 (N.D.N.Y.

Feb. 13, 2019) (citing, *inter alia*, *Allborty v. Comm'r of Soc. Sec.*, No. 6:14-CV-1428

(DNH/ATB), 2016 WL 770261, at *8 (N.D.N.Y. Jan. 28, 2016), *rep't-rec. adopted*, 2016 WL

796071 (N.D.N.Y. Feb. 22, 2016)).

In *Amanda L. C. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0817 (GTS), 2020 WL 4783169,

at *6 (N.D.N.Y. Aug. 18, 2020), Judge Suddaby provided an excellent explanation of the nature

of the court's review:

> "The Appeals Council shall consider evidence submitted after the ALJ's decision
> if the petitioner can show 'good cause' for not submitting the evidence to the ALJ
> and that the additional evidence is 'new, material, and relates to the period on or
> before the date of the hearing decision.' " *Tricario v. Colvin*, 681 Fed. App'x 98,
> 102 (2d Cir. 2017) (citing 20 C.F.R. §§ 404.970[a][5], [b]).  Additionally, even if
> a court determines that the Appeals Council erred by rejecting new and material
> evidence, "remand is only appropriate where there is a 'reasonable possibility'
> that this evidence would have influenced the ALJ to decide the disability
> determination differently." *Tricario*, 681 Fed. App'x at 102 (citing *Lisa v. Sec'y
> of Dep't of Health & Human Servs.*, 940 F.2d 40, 43 [2d Cir. 1991]).
>
> "Evidence is 'material' if there is 'a reasonable possibility that the new evidence
> would have influenced the Secretary to decide claimant's application differently."
> *Davidson v. Colvin*, 12-CV-0316, 2013 WL 5278670, at *7 (N.D.N.Y. Sept. 18,
> 2013) (Bianchini, M.J., D'Agostino, J.).  The Second Circuit has indicated that
> "medical evidence generated after an ALJ's decision [can] not be deemed
> irrelevant solely because of timing, [as] subsequent evidence of the severity of a
> condition suggests that the condition may have been more severe in the past than
> previously thought." *Suttles v. Colvin*, 654 Fed. App's 44, 47 (2d Cir. 2016).

       **B.**       **New Evidence Submitted to Appeals Council in this Case**

Plaintiff was represented by counsel at all relevant times in this proceeding.  In correspondence dated August 19, 2024, Plaintiff's counsel advised the ALJ of several outstanding records requests, including (1) treatment records from Plaintiff's orthopedist for the period after November 1, 2023 and (2) updated mental health records, including a Medical Source Statement from Plaintiff's current mental health provider, Nurse Practitioner ("NP") Amy Nistico. (T. 387.)  Counsel requested that the record be left open for a suitable period. (*Id.*)

At Plaintiff's August 26, 2024 hearing, counsel repeated this request, advising that the orthopedic treatment notes in the record end in "late fall or winter of '23," and did not contain any updates from 2024. (T. 64.)  The ALJ provided Plaintiff a two week period to supplement the record, and advised counsel to promptly notify him if further extensions were necessary. (T. 64-65.)  The ALJ repeated this deadline and the extension offer at the close of the hearing. (T. 94.)

On or about August 27, 2024, Plaintiff's orthopedist provided counsel with approximately fourteen pages of records, including a February 2024 imaging report and treatment notes dated between February 20, 2024 and February 29, 2024. (T. 35-47.)  The records reflect Plaintiff's complaint of worsening neck pain that radiated down his left arm and physician observation of reduced range of motion. (T. 37.)  The observed deterioration in Plaintiff's condition prompted his physicians to order an MRI and surgical consultation, although Plaintiff ultimately opted to continue with physical therapy and other conservative treatment. (T. 41-42, 44.)

NP Nistico provided a completed Medical Source Statement to counsel on or about October 4, 2024. (T. 48-58.)  Correspondence indicates that the opinion was delayed because

Plaintiff had missed several mental health appointments while he was involved in eviction proceedings. (T. 48.)  In her Medical Source Statement, NP Nistico reported a treatment relationship with Plaintiff dating back to October 2023, with Plaintiff attending seven appointments and missing four during that time. (T. 49.)

Utilizing a check-box form with some narrative, NP Nistico opined that Plaintiff had "marked" limitations in certain aspects of social interaction, concentration, and adaptation. (T. 53-56.)  Specifically, she opined that Plaintiff had marked limitations in asking for help when needed; keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness; assuming increased mental demands associated with competitive work; sustaining tasks without undue interruptions or distractions; working a full day without excessive rest periods; responding to demands; and managing his psychologically based symptoms. (*Id*.)  NP Nistico opined that Plaintiff would be off-task approximately fifteen percent of the workday due to his mental health symptoms and was likely to miss approximately four days of work per month. (T. 56, 58.)

In correspondence dated October 7, 2024, Plaintiff's counsel provided this new evidence to the ALJ. (T. 35-58.)  By this time, the ALJ had already issued his October 4, 2024 decision. (T. 13-34.)  The ALJ's decision notes that he had repeatedly notified Plaintiff of the deadline for supplementing the record or requesting an extension, but that no further medical evidence or correspondence had been received after the hearing. (T. 16, 388.)

In connection with Plaintiff's request for review, the Appeals Council found this new evidence "does not show a reasonable probability that it would change the outcome of the [ALJ's] decision." (T. 2.)

**C.      Recommendation for Remand for Further Evaluation of New and Material Evidence.**

The Appeals Council's October 31, 2024 denial implicitly recognized that Plaintiff's proffered evidence was new and relevant to the period on or before the ALJ's decision. (T. 2.) The Commissioner's brief recognizes this as well and focuses its arguments on whether the records and mental health opinion "significantly undermine the ALJ's decision." (T. 15.)  Still, in the interest of clarity, this Court will walk through the various elements of its analysis.

To begin with, this Court finds that the orthopedic notes and mental health opinion are both "new" in that they were never presented to the ALJ.  *See Ovitt v. Colvin*, No. 12-CV-1522 (DNH), 2014 WL 1806995, at* 3 (N.D.N.Y. May 7, 2014) (defining new evidence as "any evidence that has not been considered previously during the administrative process").  Although the ALJ was notified that such evidence may be forthcoming, the documents had not been provided by the time of the ALJ's decision.  In the case of NP Nistico's Medical Source Statement, the document was not completed until October 4, 2024, the same date as the ALJ's decision.

This Court also finds that Plaintiff had "good cause" for failing to provide the documents earlier.  In particular, the Court notes that at least some of the delay was attributed to Plaintiff's involvement in eviction proceedings. (T. 35.)  Although Plaintiff's counsel should have (1) provided the orthopedic notes to the ALJ more promptly and (2) timely requested an extension of time to solicit NP Nistico's opinion, the record otherwise documents his diligent efforts to keep the ALJ informed about his attempts to supplement the record. (T. 35, 48, 64, 387.)  This Court also notes the ALJ's flexibility regarding the availability of extensions. (T. 16, 64-65, 97, 388.)

Moving to materiality, this Court finds that NP Nistico's opinion and the orthopedic treatment notes are material, in that they all relate to the period covered by the ALJ's decision

11

and there is a 'reasonable possibility' that this evidence would have influenced the ALJ to decide the disability determination differently.

Addressing NP Nistico's mental health opinion first, this Court notes that the ALJ's step three listings analysis and RFC determination relied upon the "persuasive" opinions of non-examining consultant Dr. Ochoa, who reviewed Plaintiff's mental health records in January 2024, and Dr. Vanessa Laird, who performed a consultative psychiatric examination of Plaintiff in November 2023. (T. 22, 25, 143-146, 517-521.)  In doing so, the ALJ rejected the more restrictive opinions from Dr.  Brett Hartman, who performed a consultative psychiatric examination in February 2023, and Licensed Mental Health Counselor Mary Baker, who completed a mental health opinion in March 2023. (T. 438-442, 478-480.)

The ALJ based his assessment of the functional limitations imposed by Plaintiff's mental health impairments on the opinions available to him.  However, the Second Circuit has "frequently cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination . . . . This is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of [his] longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019). (internal quotations omitted).  Likewise, even under the amended regulations that eliminate the deference afforded to treating source opinions, courts have recognized the "foundational nature" of direct observation of a patient, and "consistency with those observations" is a factor in evaluating the value of a medical opinion.  *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *8 (D. Vermont July 14, 2020) (remanding where ALJ relied upon opinion of non-examining consultant who had no opportunity to review treating source opinions that described greater restrictions).

Although Ms. Baker had a treatment relationship with Plaintiff, that appears to have ended in January 2023, and her opinion is dated March 2023. (T. 475, 544.)  The ALJ also appears to have discounted her opinion in light of Ms. Baker's dual role as Plaintiff's "therapist and landlord." (T. 21-22, 543-544.)  It thus appears a more than reasonable possibility that the opinion of an acceptable medical source addressing Plaintiff's psychiatric functional limitations based upon multiple in-person evaluations between October 2023 and October 2024 could influence the ALJ to reach a different disability determination.

This Court reaches the same conclusion regarding the new orthopedic records provided to the Appeals Council.  The ALJ considered Plaintiff's treatment history for back and neck pain dating back to October 2021 and emphasized November 2023 consultative examination results that suggested an improvement in Plaintiff's physical function. (T. 26, 389, 410, 435.)  At his August 26, 2024 hearing, Plaintiff testified that he aggravated his back pain in "February or March" 2024, and a contemporaneous MRI "found a tumor." (T. 74-75.)  Thus, it is reasonably possible that treatment notes from this period and the associated imaging report documenting a deterioration of Plaintiff's back and neck pain could bolster Plaintiff's testimony and influence the ALJ's evaluation of the relevant medical opinions and the ultimate physical RFC determination.

In recommending remand, this Court is not making any comment on how persuasive the ALJ should find this new evidence.  In addition, Plaintiff's brief correctly notes that evaluation of NP Nistico's opinion and the orthopedic records will necessarily impact the ALJ's evaluation of the other opinion evidence, Plaintiff's testimony, and the step five determination. (Dkt. No. 14 at 15-16.)  Accordingly, this Court recommends that the District Court refrain from additional examination of Plaintiff's remaining challenges to the ALJ's decision.  *See, e.g., Bell v. Colvin,*

No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach remaining arguments where the court had already determined remand was warranted); *Hamilton v. Astrue,* No. 5:11–cv–954 (GLS), 2012 WL 5303338, at *3 (N.D.N.Y. Oct. 25, 2012) ("Because [plaintiff's] remaining arguments are contingent upon the ALJ's resolution of the foregoing issue on remand, the court need not address them."); *Morales v. Colvin,* No. 13-CV-06844, 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments on the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *rep't-rec. adopted by* 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) be **GRANTED**; Defendant's motion for judgment on the pleadings (Dkt. No. 16) be **DENIED** and that the matter be **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  February 27, 2026
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

14